# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------x
In re                                                :     Chapter 11
                                                    :
HERMANI HOTELS, LLC,[1]            :     Case No.  20-10701 (AMC)
                                                    :
                         Debtor.        :
---------------------------------------------------------x

**DEBTOR'S MOTION FOR
INTERIM AND FINAL ORDERS:  (A) AUTHORIZING DEBTOR
TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105 AND 363(c)(2);
(B) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361;
(C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; AND
(D) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPCY RULE 4001**

The debtor and debtor in possession in the above-captioned cases (the "**Debtor**") hereby moves (the "**Motion**") for entry of an interim order, a draft form of which is attached hereto as Exhibit A (the "**Interim Cash Collateral Order**")[2] and a Final Order (defined below), pursuant to sections 105(a), 361, 362, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1 and 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Local Rules**"):  (a) authorizing the Debtor to use cash collateral; (b) granting adequate protection to the Prepetition Secured Parties (defined herein); (c) modifying the automatic stay; and (d) scheduling a final hearing.  In support of the Motion the Debtor, by and through undersigned counsel, respectfully represent:

---

[1]  If applicable, the last four digits of the taxpayer identification number of the Debtor is 0522 and the Debtor's address is 4700 Street Road, Trevose, PA 19053.

[2]  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Interim Cash Collateral Order.

## JURISDICTION

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 4001 and 9014 and Local Rules 2002-1 and 4001-2.

## BACKGROUND

2. On January 31, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property and managing its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. An official committee of unsecured creditors has not yet been formed (the "**Committee**").

3. The Debtor is a three-member limited liability company duly formed under the laws of the Commonwealth of Pennsylvania. The Debtor owns and operates the Wyndham Philadelphia – Bucks County, located at 4700 E. Street Road, Feasterville - Trevose, PA 19053. The Debtor experienced its most successful year in 2014. Thereafter, five (5) new hotels opened in the surrounding area which led to the loss of many of the Debtor's clientele in the corporate market. Although there has been increased competition, the Debtor has been able to maintain a strong customer base and retain a significant value. However, despite the significant value of the Debtor's assets, the Debtor has faced certain liquidity problems leading to the filing of this chapter 11 case.

4. The Debtor has notified Philadelphia Federal Credit Union of its intent to seek use of cash collateral and has requested consent, to the extent that such consent is necessary.

5. Absent authority to use Cash Collateral, the Debtor will not have any available sources of working capital to preserve the value of their assets as contemplated by the Budget.[3] The ability of the Debtor to obtain working capital and liquidity through the use of Cash Collateral as set forth in this Interim Cash Collateral Order is vital to the preservation and maintenance of the value of the Debtor's assets. Accordingly, the Debtor has an immediate need to obtain authorization to use Cash Collateral in order to, among other things, preserve the assets in conjunction with the overall plan to revive the Debtor's operations in order to maximize the value of the assets of the Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "**Estates**") thereby maximizing the recovery to all creditors of the Estates.

6. The Debtor has also provided copies of the proposed Interim Cash Collateral Order and budget to counsel to Philadelphia Federal Credit Union, the U.S. Trustee and any other known secured creditor. While the Debtor is hopeful that the pending issues can be resolved prior to the hearing, the Debtor reserves the right to withdraw this Motion and/or seek additional or different relief that may be available to them consistent with prior orders of this Court in the event that the parties are unable to reach agreement for use of Cash Collateral on terms that will provide for payment of appropriately budgeted obligations, including professional fees and expenses.[4]

---

[3] A copy of the Debtor's 14 week budget and projected annual budget is attached hereto as Exhibit "B".

[4] In the event that the Debtor does not proceed with this Motion or proceed with additional or different relief as stated above, nothing in this Motion or in the proposed draft Interim Cash Collateral Order is intended to bind, or should bind, the Debtor, its Estate or any other party.

**RELIEF REQUESTED**

7. By this Motion, the Debtor seeks entry of two orders. First, the Debtor seeks entry of an Interim Cash Collateral Order, a draft form of which is attached hereto as Exhibit A. Second, following notice of the Motion and the Interim Cash Collateral Order and a hearing (the "Final Hearing") on the relief requested herein, the Debtor seeks entry of a final order granting the relief requested herein on a final basis (the "Final Order").[5] The entry of the Interim Cash Collateral Order is necessary to provide the Debtor with access to Cash Collateral until the Final Hearing can be held.

8. The Interim Cash Collateral Order includes a number of terms that bear note, certain of which constitute material provisions requiring explicit disclosure under the Bankruptcy Rules and Local Rules.[6] The provisions described in Bankruptcy Rule 4001(b)(1)(B)(i)-(iv), to the extent applicable, are set out at the following sections of the Interim Cash Collateral Order:[7]

  (i) <u>Name of each entity with an interest in the Cash Collateral</u>. The entities with an interest in the Cash Collateral include: Philadelphia Federal Credit Union. Interim Cash Collateral Order ¶¶ 1.

  (ii) <u>Purposes for the use of the Cash Collateral</u>. The purpose of the Debtor's use of Cash Collateral is to preserve and maintain the value of the Debtor's Estates as the Debtor continues to pursue a strategy of restructuring its debts and/or pursue a sale of

---

[5] A copy of the proposed Final Order will be filed prior to the Final Hearing.

[6] While the Debtor has attempted to highlight the provisions required by the Bankruptcy Rules and Local Rules, as well as certain other material provisions, the Debtor reserves the right to supplement this list at the hearing with respect to this Motion.

[7] Any summary of any terms of the Interim Cash Collateral Order contained in this Motion is qualified in its entirety by reference to the provisions of the Interim Cash Collateral Order. The Interim Cash Collateral Order will control in the event of any inconsistency between this Motion and the Interim Cash Collateral Order. Unless otherwise defined herein, capitalized terms used in this section have the meanings ascribed to them in the Interim Cash Collateral Order.

      substantially all of its assets.  Interim Cash Collateral Order ¶¶ A, C.

  (iii) <u>The material terms, including duration, of the use of Cash Collateral</u>.  The Debtor shall be authorized to use the Cash Collateral on an interim basis until March 15, 2020 (or such later date to which Philadelphia Federal Credit Union may agree to in writing).  The remaining material terms are described below.  Interim Cash Collateral Order ¶ 1.

  (iv) <u>Any liens, cash payments or other adequate protection that will be provided to each entity with an interest in the Cash Collateral</u>.  As adequate protection for the diminution in value of their interests in the Prepetition Collateral, including Cash Collateral, on account of the Debtor's use of such Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay, the Interim Cash Collateral Order grants Philadelphia Federal Credit Union: (a) valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral to the extent of any diminution in value of its interests in the Prepetition Collateral; and (b) to the extent provided by section 507(b) of the Bankruptcy Code allowed superpriority administrative expense claims in each of the Cases and any Successor Cases to the extent of any diminution in value of their interests in the Prepetition Collateral.  In addition, as adequate protection for the diminution in value of its interests in the Prepetition Collateral, including Cash Collateral, on account of the Debtors' use of such Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay.  Interim Cash Collateral Order ¶¶ 3 & 4.

9. In accordance with Local Rule 4001-1, the Debtor also draws the Court's attention to certain material provisions of the relief set forth in the Interim Cash Collateral Order:

  (i) <u>Cross-Collateralization other than for Adequate Protection (Local Rule 4001-1(c)(1)</u>.  Not applicable.

  (ii) <u>Waiver of Section 506(c) Surcharge (Local Rule 4001-1(c)(3)</u>.  Interim Cash Collateral Order ¶ 5.

  (iii) <u>No liens on Avoidance Actions (Local Rule 4001-1(c)(4)</u>.  Interim Cash Collateral Order ¶¶ 4.

  (iv) <u>Roll-Over Provisions (Local Rule 4001-1(c)(5)</u>.  Not applicable.

5

   (v)   <u>Disparate Treatment of Professionals (Local Rule 4001-1(c)(6)</u>. Not applicable.

   (vi)   <u>Priming Lien (Local Rule 4001-1(c)(9)</u>.  Not applicable.[8]

10. The provisions of the Interim Cash Collateral Order are subject to negotiation with PFCU and therefore the above-noted terms may be adjusted accordingly in order to procure the consensual use of the Cash Collateral on a timely basis.

## ADEQUATE PROTECTION

11. In exchange for PFCU's consent for the Debtor to use Cash Collateral, the Debtor has proposed to grant PFCU the following as adequate protection of their interests in the Prepetition Collateral (the "**Proposed Adequate Protection**"):

| | |
|---|---|
| **Replacement Liens:** | *Replacement Lien*. As adequate protection for the diminution in value of their interests in the Prepetition Collateral, including Cash Collateral, on account of the Debtor's use of such Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out-Expenses, the Interim Cash Collateral Order grants PFCU, pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral to the extent of any diminution in value of their interests in the Prepetition Collateral (the "**PFCU Replacement Lien**"); <u>provided</u>, <u>however</u>, that the PFCU Replacement Lien shall not extend to any causes of actions commenced, or that may be commenced, pursuant to chapter 5 of the Bankruptcy Code against PFCU, or the proceeds of any such causes of action. The PFCU Replacement Lien shall be junior and subordinate only to the Permitted Liens and Claims, the Carve-Out Expenses and otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral. |
| **Section 507(b) Priority Claims:** | As adequate protection for the diminution in value of their interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtors' use of such Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay |

---

[8] References to Local Rule 4001-1(c)(7, 8, 10-12) are not applicable in this Motion.

6

    and the subordination to the Carve-Out-Expenses, the Interim Cash Collateral Order grants PFCU, as and to the extent provided by Section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim to the extent of any diminution in value of their interests in the Prepetition Collateral (the "**PFCU Adequate Protection Superpriority Claim**"); provided, however, that the PFCU Adequate Protection Superpriority Claim shall not extend to any causes of actions commenced, or that may be commenced, pursuant to chapter 5 of the Bankruptcy Code against PFCU or the proceeds of the foregoing. The PFCU Adequate Protection Superpriority Claim shall be junior only to Carve-Out Expenses and otherwise have priority over all administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

12. Furthermore, the Debtor submits that PFCU is adequately protected by virtue of substantial equity in its property. Attached hereto as Exhibit "C" is a copy of an appraisal dated November 19, 2018 (the **"Appraisal"**) from Gohn & Company LLC, located in Chadds Ford, Pennsylvania. The Appraisal establishes the value of the Debtor's property in the amount of $24,500,0000. Importantly, this Appraisal was commissioned by and prepared for PFCU at PFCU's direction.

13. Considering that the debt which PFCU claims is owed by the Debtor is $12,537,728.28, there is clearly a significant amount of equity cushion in the PFCU collateral. Therefore, the Debtor readily demonstrates that there is more than adequate protection regarding the PFCU claims.

## BASIS FOR RELIEF

**A. Use of Cash Collateral**

14. Section 363 of the Bankruptcy Code governs the Debtor's use of property of their estates.[9] Section 363(c)(1) of the Bankruptcy Code provides that:

> If the business of the debtor is authorized to be operated under Section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

15. Section 363(c)(2) of the Bankruptcy Code, however, provides an exception with respect to "cash collateral" to the general grant of authority to use property of the estate in the ordinary course set forth in section 363 of the Bankruptcy Code. Specifically, a trustee or debtor in possession may not use, sell, or lease "cash collateral" under subsection (c)(1) unless:

> (A) each entity that has an interest in such collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363 of the Bankruptcy Code].

11 U.S.C. § 363(c)(2).

16. The Debtor submits that, under the circumstances, its request to use Cash Collateral should be approved. The Debtor has proposed replacement liens to PFCU for any diminution of

---

[9] Pursuant to section 1107 of the Bankruptcy Code, a debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with section 363 of the Bankruptcy Code. See 11 U.S.C. § 1107(a).

8

value. Further, even if PFCU failed to consent to those terms, by virtue of the Appraised value of the Debtor's property, there is approximately $12 million in equity cushion.

**B.     Approval of Adequate Protection**

17.     The Debtor acknowledges that PFCU is entitled to be adequately protected to the extent of any diminution in value of their respective interests in the Prepetition Collateral resulting from the Debtor's use of Cash Collateral, the imposition of the automatic stay, and the Debtor's use, sale, or lease of Prepetition Collateral. The Bankruptcy Code does not explicitly define "adequate protection." Section 361 of the Bankruptcy Code does, however, provides three nonexclusive examples of what may constitute "adequate protection" of an interest of an entity in property under sections 362, 363 or 364 of the Bankruptcy Code:

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such . . . use . . . or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

18.     Similarly, the Bankruptcy Code does not expressly define the nature and extent of the "interest in property" of which a secured creditor is entitled to adequate protection under sections 362, 363, and 364 of the Bankruptcy Code. However, the Bankruptcy Code plainly contemplates that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property."

See 11 U.S.C. § 361. Indeed, courts have repeatedly held that the purpose of adequate protection "is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization." In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); see also In re Mosello, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (same); Bank of New England v. BWL, Inc., 121 B.R. 413, 418 (D. Me. 1990) (same); In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (focus of adequate protection "is protection of the secured creditor from diminution in the value of its collateral during the reorganization process"). The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. See In re Mosello, 195 B.R. at 288. "Its application is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process." Id. (quoting In re Beker Indus. Corp., 58 B.R. at 736).

19.   The proposed Interim Cash Collateral Order provides PFCU with the Proposed Adequate Protection as described above, including: (a) replacement liens; (b) superpriority claims pursuant to section 507(b) of the Bankruptcy Code; and (c) monthly interest only payments in the amounts set forth in the Budget.

**C.   The Section 506(c) Waiver in the Final Order Should Be Approved**

20.   Pursuant to the Interim Cash Collateral Order, the Debtor agrees to waive any rights to charge costs and expenses of administration which have or may be incurred in the Cases against the Collateral. The waiver of surcharge rights is appropriate where, as here, it is tied to the benefit to be received from the secured parties by allowing the Debtor to continue to use Cash Collateral and the proceeds of the Collateral to fund the administration of the Debtors' estates in accordance with the Budget. See In re Lunan Family Restaurants Ltd. P'ship, 192 B.R. 173, 178 (N.D. Ill. 1996) ("The burden of proof is on any proponent of § 506(c) treatment, who must show by a

preponderance of evidence that [(1) the expenditure was necessary, (2) the amounts were reasonable, and (3) the secured creditor was the party primarily benefited by the expenditure].") (citing In re Flagstaff, 739 F.2d 73, 77 (2d Cir. 1984) and New Orleans Public Service Inc. v. Delta Towers, Ltd. (In re Delta Towers), 112 B.R. 811, 815 (E.D. La. 1990), rev'd on other grounds sub nom., In re Delta Towers, 924 F.2d 74 (5th Cir. 1991).

### D.    Interim Approval Should Be Granted

21.    Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

22.    The Debtor requests that the Court hold and conduct a preliminary hearing as soon as possible, to consider entry of the Interim Cash Collateral Order, authorizing the Debtor from and after entry of the Interim Cash Collateral Order until the Final Hearing to use Cash Collateral. If the relief requested herein is not granted on or prior to that date, the Debtor's operations will be interrupted thereby losing valuable income and consequently will be unable to pay for necessary expenditures to preserve the value of their assets, including payroll, and to fund the costs of these chapter 11 cases.  The Debtor requires ongoing use of Cash Collateral to ensure that its assets retain their full value.  Accordingly, granting the relief requested herein will enable the Debtor to refinance or liquidate its assets in a value-maximizing manner and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

**E.      Notice Procedures and the Final Hearing**

23.     Since a Final Order may only be entered after notice and a hearing, the Debtor shall, within three (3) business days of the entry of the Interim Order by the Court, serve by overnight mail on (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to PFCU; (d) those parties requesting service in these cases pursuant to Bankruptcy Rule 2002; (e) all appropriate state taxing authorities, (f) all landlords, lessees, and/or operators of premises at the Debtor's location, and (g) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded prepetition liens or security interests against any of the Debtor's assets (collectively, the "**Noticed Parties**"), a copy of the Interim Order and a notice of the Final Hearing (the "**Final Hearing Notice**") to consider entry of the Final Order on the date established by the Court.  The Final Hearing Notice will also inform recipients that any party in interest objecting to the relief sought at the Final Hearing will be required to serve and file an objection, which objection shall: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware by no later than 4 p.m. on the day that is not less than seven (7) calendar days before the Final Hearing (the "**Objection Deadline**"); and (iv) be served upon the following parties so as to be received by the Objection Deadline:  (a) the U.S. Trustee, (b) counsel for the Debtor and (c) counsel to PFCU (William Levant).

24.     The Debtor respectfully requests that the Court schedule the Final Hearing on this as soon as practicable.  Such relief is necessary in order to maintain the value of the Debtor's assets and avoid immediate and irreparable harm and prejudice to the Debtor's estate.

## NOTICE

25. Notice of this Motion will be given to the Noticed Parties. The Debtor submits that, under the circumstances, no other or further notice is required.

26. No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE the Debtor respectfully requests: (i) entry of an order substantially in the form of the proposed Interim Cash Collateral Order annexed hereto as Exhibit A; (ii) after the Final Hearing, entry of the Final Order substantially in the form that shall be filed with the Court; and (iii) such other and further relief as may be just or proper.

Dated: February 3, 2020

GELLERT SCALI BUSENKELL & BROWN LLC

*/s/ Ronald S. Gellert*
Ronald S. Gellert (PA 80783)
Holly S. Miller (PA 203979)
8 Penn Center
1628 John F. Kennedy Boulevard, Suite 1910
Philadelphia, PA 19103
Telephone: (215) 238-0010
Facsimile: (215) 238-0016
rgellert@gsbblaw.com
hsmiller@gsbblaw.com

*Proposed Counsel to the Debtor*